UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

RUTH WILSON,

                Plaintiff,

      -v-

L3 HARRIS,

           Defendant.

———————————————————————

**DECISION AND ORDER**

6:23-CV-06079 EAW

## INTRODUCTION

*Pro se* plaintiff Ruth Wilson ("Plaintiff" or "Wilson"), a former employee of L3 Harris Technologies, Inc. ("Defendant" or "L3 Harris"), commenced this lawsuit on January 30, 2023, alleging that Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*. and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq*. (Dkt. 1). Plaintiff alleges that Defendant discriminated against her on the basis of her race and age and retaliated against her by failing to employ her in a new position at L3 Harris after her existing position was eliminated. (*Id.* at 13-15). Defendant has now moved to dismiss the complaint, or alternatively, for summary judgment. The pending motion is based exclusively on the argument that Plaintiff signed a release of all claims regarding her employment when she left L3 Harris and, according to Defendant, the present claims are barred based on that release. (Dkt. 12-2 at 4). Because Defendant has not established that the release operates to bar the present claims being pursued by Plaintiff, the pending motion is denied.

- 1 -

## **BACKGROUND**

The following facts are taken from the complaint and its attached exhibits.  (Dkt. 1).
As required on a motion to dismiss, the Court treats Plaintiff's factual allegations as true
and draws all inferences in her favor.

Wilson was working in an administrative position with L3 Harris' human resources
department in March 2021.  (*Id.* at 12).  On March 18, 2021, her position was eliminated.
(*Id.*).  After she was terminated, L3 Harris paid Wilson $42,394.00.  (*See id.* at 14).  This
payment was in consideration of an agreement signed by Wilson on March 25, 2021, in
which she waived certain legal claims against L3 Harris in exchange for the payment (the
"Release of Claims").  (Dkt. 12-1 at 4-8).

After her termination, Wilson applied for multiple other positions with L3 Harris
performing administrative support work similar to her previous position.  (Dkt. 1 at 12-14).
Wilson appears to have sent applications both before and after she signed the Release of
Claims.  (*Id*. at 14; *see* Dkt. 14 at 3-51 (email communications pertaining to job applications
submitted between March 18, 2021, and September 7, 2021)).  These applications were
denied, despite other similarly or less qualified white and younger applicants getting
interviews, job offers, or promotions.  (*See id.* at 13).  Wilson alleges that L3 Harris rejected
her applications because of her race and age.  (*Id.* at 15).  Wilson alleges that the
discrimination commenced on March 18, 2021, and was continuing at the time she
commenced this lawsuit.  (*Id.* at 3).

On May 27, 2021, Wilson filed a charge with the Equal Employment Opportunity
Commission ("EEOC") alleging race and age discrimination against L3 Harris.  (Dkt. 12-

1 at 10-12).  The EEOC issued a right to sue letter to Wilson on November 18, 2022.  (Dkt.

1 at 7).  Wilson then filed the instant action.

## DISCUSSION

### I.    Legal Standard

A court should consider a motion to dismiss by "accepting all factual allegations as

true and drawing all reasonable inferences in favor of the [claimant]."  *Trs. of Upstate N.Y.*

*Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand

dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible

on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial

plausibility when the [claimant] pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Turkmen v.*

*Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal

quotations and citations omitted).  "To state a plausible claim, the complaint's '[f]actual

allegations must be enough to raise a right to relief above the speculative level.'"  *Nielsen*

*v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at

555).

While the Court is "obliged to construe [*pro se*] pleadings liberally," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must satisfy the plausibility standard set forth in *Iqbal* and *Twombly*. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly*, though, we remain obligated to construe a *pro se* complaint liberally."). "Specific facts are not necessary[,]" and a plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555); *see also Boykin v. Keycorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases.").

## II.   Consideration of the Release of Claims on a Motion to Dismiss

In deciding a motion to dismiss, courts may consider "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (internal quotation omitted), *cert. denied*, ___ U.S. ___, 142 S. Ct. 2679 (2022). Courts may also consider documents "integral to [a] claim . . . ." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation omitted).

"Integral" documents include "instances where . . . the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Foreman*, 19 F.4th at 107 (internal quotation omitted); *see L-7 Designs*,

647 F.3d at 422 ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid— may not serve as a means of forestalling the district court's decision on a 12(b)(6) motion.") (internal alteration omitted); *Barker v. Bancorp, Inc.*, 21 Civ. 869 (KPF), 2022 WL 595954, at *6 (S.D.N.Y. Feb. 25, 2022) ("The Second Circuit has cautioned district judges to be mindful of litigants who cherry-pick among relevant documents, and has clarified that district courts may consider relevant documents that are fairly implicated by a plaintiff's claims, irrespective of whether they are part of the pleadings."); *Edrehi v. Brookhaven Sci. Assocs., LLC*, CV 15-5940 (SJF)(AYS), 2017 WL 4466501, at *2 (E.D.N.Y. Aug. 30, 2017) (where "pleadings reference [an] investigation and underlying facts which led to the terms of [an] [a]greement" and the agreement "contain[ed] an offer of settlement, and was undoubtedly accepted and properly executed by [p]laintiff," a plaintiff "may not avoid consideration of the [agreement] . . . merely because such consideration may detract from [p]laintiff's claim . . . ."), *adopted*, 2017 WL 4381659 (E.D.N.Y. Sept. 27, 2017).

Here, the Release of Claims is integral to the complaint because the complaint "stands or falls" on its applicability, and if attached to the complaint it could have "undermine[d] the legitimacy" of Plaintiff's claims. *Foreman*, 19 F.4th at 107. Plaintiff indisputably had notice of the Release of Claims because she signed it (Dkt. 12-1 at 8) and references its payout in her complaint, although not the document itself (Dkt. 1 at 14). Therefore, allowing Plaintiff to "forestall[] the district court's decision on a [12(b)(6)] motion" by omitting reference to the Release of Claims would be improper. *L-7 Designs*,

647 F.3d at 422.  The Court will therefore consider the Release of Claims in its assessment of Defendant's motion to dismiss.

### III.   Scope of the Release of Claims

While the Release of Claims may be appropriately considered on this motion to dismiss, Defendant has failed to establish that its consideration warrants the relief requested.  In other words, drawing all reasonable inferences in Plaintiff's favor, the complaint alleges conduct that falls outside the scope of the Release of Claims.

Congress has specifically barred individuals from waiving future claims under the ADEA.  *See* 29 U.S.C. § 626(f)(1)(C) (individuals may not waive "rights or claims that may arise after the date the waiver is executed"); *Moorning-Brown v. Bear, Stearns & Co., Inc.*, No. 99 CIV. 4130 JSR HBP, 2000 WL 16935, at *7 n.5 (S.D.N.Y. Jan. 10, 2000) ("A waiver is not considered knowing and voluntary if the individual waives rights or claims that may arise after the date the waiver is executed.") (internal quotation omitted).  The Release of Claims acknowledges this requirement, expressly stating that it applies to ADEA claims arising "at any time prior to the effective date of this [a]greement but does not include claims arising after [Plaintiff's] execution of this [a]greement . . . ."  (Dkt. 12-1 at 4).

Here, drawing all reasonable inferences in Plaintiff's favor, she has alleged ADEA claims that may have arisen after the Release of Claims was executed.  The EEOC filing attached to the complaint enumerates five openings that Plaintiff applied for between March 19, 2021, and April 27, 2021.  (Dkt. 1 at 14).  Plaintiff executed the Release of Claims on March 25, 2021.  (Dkt. 12-1 at 8).  Moreover, in opposition to the motion to

dismiss, Plaintiff has cited to job applications through September 7, 2021. (Dkt. 14 at 47-51). This Court may reasonably infer that the allegedly discriminatory decisions not to hire Plaintiff occurred after the Release of Claims was executed, and therefore, could not have been waived. *See* 29 U.S.C. § 626(f)(1)(C). Indeed, as Plaintiff contends in opposition to the motion, the Release of Claims did not prevent her from searching for employment within L3 Harris and, nonetheless, Defendant allegedly prevented her from obtaining employment. (Dkt. 14 at 1).

To counter Plaintiff's argument, Defendant cites to *Blakeney v. Lomas Info. Sys.*, 65 F.3d 482, 485 (5th Cir. 1995), where the Fifth Circuit found that a failure to rehire claim arising after a release of claims was signed was still subject to the release because the "employees' cause of action for failure to rehire [was] simply an attempt to revive claims they were paid to release." *Id*. at 485; *see also Kellogg Co. v. Sabhlok*, 471 F.3d 629, 635 (6th Cir. 2006) (also relied upon by Defendant, where the Sixth Circuit echoed the rule set forth in *Blakeney* and concluded that the failure to rehire the plaintiff during the period between the notice of his termination and his last day of work did not arise separately from the decision to terminate his employment). However, at least one court has cautioned that "*Blakeney* should not be read broadly and indiscriminately to make every subsequent employment application a 'rehire.'" *Gustafson, Inc. v. Bunch*, Civil Action No. 3:97-CV-2102-D, 1999 WL 304560, at *3 n.7 (N.D. Tex. May 7, 1999). And while the Second Circuit has stated in the statute of limitations context that failure to rehire allegations do not allege discrete acts of discrimination so as to revive an untimely claim, *see Riddle v. Citigroup*, 449 F. App'x 66, 71 (2d Cir. 2011), it has never directly endorsed the rule

- 7 -

enunciated in *Blakeney*. *C.f. Pacheco v. Park S. Hotel, LLC*, 2014 WL 292348, at *6 (S.D.N.Y. Jan. 27, 2014) (citing *Riddle* in support of the conclusion that a failure to rehire claim based on the "hiring of new and younger employees in [plaintiff's] position . . . constitutes a new act of discrimination" separate from the plaintiff's "untimely termination claim").

Notwithstanding the arguments advanced by Defendant, the Court cannot conclude on this record that Plaintiff's claims are barred by the Release of Claims. Plaintiff has not asserted a wrongful termination claim in the present litigation, and the Court is not persuaded that it should link Plaintiff's claims of failure to hire to the claims released upon the termination of employment. In other words, it is not possible for the Court to conclude on this record that Plaintiff's pending claims are a mere attempt to revive or resurrect any waived wrongful termination claim. Indeed, Plaintiff has alleged that several other white and younger applicants were later hired and that she applied for several other completely new positions with L3 Harris. These allegations support a conclusion that Plaintiff's new claims are distinct from her termination of employment.

Similar reasoning applies to Wilson's Title VII claims. "The enforceability of [a] release as to [a] Title VII claim is governed by federal law. Under Title VII, an employee may validly waive a discrimination claim so long as the waiver is made knowingly and voluntarily." *Long v. Corning, Inc.*, 847 F. App'x 74, 75 (2d Cir. 2021). Unlike the ADEA and the Older Workers Benefits Protection Act (OWBPA), Title VII does not expressly bar the waiver of future claims. *See Tung v. Texaco, Inc.*, 150 F.3d 206, 208 (2d Cir. 1998) (per curiam) (applying OWBPA requirements to ADEA claims and totality-of-the-

circumstances test to Title VII claims).  However, courts still generally reject such waivers. *See Separ v. Nassau Cnty. Dep't of Soc. Servs.*, No. 11-CV-2668 (PKC), 2014 WL 4437676, at *4 n.4 (E.D.N.Y. Sept. 9, 2014) ("[The] June 2008 settlement's provision barring [p]laintiff from *prospectively* suing [d]efendants for employment discrimination . . . *does not preclude* [p]laintiff's October 2008 non-promotion claims.  It is clearly established law that prospective waivers of an employee's rights under Title VII are void as a matter of public policy.") (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974));[1] *see also EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 450 (3d Cir. 2015) ("But even when particular requirements have not been imposed by statutes like the OWBPA, releases . . . cannot waive future claims.").[2]

As discussed above, considering the dates of Plaintiff's applications and her execution of the Release of Claims (Dkt. 1 at 14; Dkt. 12-1 at 8), it can be reasonably inferred that she may have been discriminated against after she signed the Release of Claims.  Accordingly, Defendant's motion to dismiss is denied.

---

[1]     The Second Circuit considers the relevant language from *Gardner-Denver*—"there can be no prospective waiver of an employee's rights under Title VII"—to be dicta.  *See Richardson v. Comm'n on Hum. Rts. & Opportunities*, 532 F.3d 114, 122 (2d Cir. 2008). Still, the Second Circuit construes *Gardner-Denver*'s requirement that Title VII waivers meet certain requirements "quite broadly."  *Id.* at 121.

[2]     Courts draw a distinction between "future claims" that *arise* after a waiver is signed and those that are merely *discovered* after a waiver is signed.  *Compare Separ*, 2014 WL 4437676, at *4 n.4 (waiver of claims based on discrimination occurring months after waiver was signed would be unenforceable on public policy grounds), *with Fay v. Petersen Pub. Co.*, No. 88 CIV. 6499 MBM, 1990 WL 67397, at *2-3 (S.D.N.Y. May 17, 1990) (waiver of claims based on discrimination occurring before waiver, but not discovered until after, merely subjected to the general knowing and voluntary test).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's pending motion to dismiss or alternatively

for summary judgment based on the Release of Claims (Dkt. 12) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: November 2, 2023
        Rochester, New York